SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
JAY T. RAMSEY, Cal. Bar No. 273160
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6055
Telephone:   310.228.3700
Facsimile:   310.228.3701
E mail      jramsey@sheppardmullin.com

KLEIN MOYNIHAN TURCO LLP

Neil Asnen (*pro hac vice* application to be filed)

450 Seventh Avenue, 40th Floor

New York, New York 10123

TEL: 212-246-0900

FAX: 212-216-9559

nasnen@kleinmoynihan.com

Attorneys for TTAC PUBLISHING, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| MICHELLE SHULTZ, individually and on behalf of others similarly situated,<br><br>          Plaintiff,<br><br>      v.<br><br>TTAC PUBLISHING, LLC,<br><br>          Defendant. | Case No. 4:20-cv-4375-HSG<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION, STRIKE CLASS CLAIMS AND/OR STAY PROCEEDINGS**<br><br>**Date:  Oct. 22, 2020**<br>**Time:  2:00 p.m.**<br>**Ctrm:  2, 4th Floor**<br><br>*Honorable Haywood S. Gilliam, Jr.* |

Case No. 4:20-cv-4375-HSG

SMRH:4815-5366-1896.1    DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION,
STRIKE CLASS CLAIMS AND/OR STAY PROCEEDINGS

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on October 22, 2020 at 2:00 p.m. or as soon thereafter as counsel may be heard by the above-captioned Court, located at 1301 Clay Street, Oakland, CA 94612, Courtroom 2 – 4th Floor, Honorable Haywood S. Gilliam, Jr. presiding, Defendant TTAC Publishing, LLC will and hereby do move the Court for an order:

    (a)    (i) pursuant to Fed. R. Civ. P. 12(b)(1) and/or 12(b)(3), and sections 2 and 4 of the Federal Arbitration Act, 9 U.S.C. §§ 2, 4 ("FAA") compelling individual arbitration of the claims in this action; or alternatively (ii) pursuant to 9 U.S.C. 3 staying further proceedings in this action pending the completion of final and binding arbitration;

    (b)    pursuant to Fed. R. Civ. P. 12(f) and 23(d)(1)(D) striking the claims of the putative class; or alternatively

    (c)    pursuant to this Court's inherent authority staying this action pending the United States Supreme Court's ruling in *Facebook, Inc. v. Duguid et al.*, Supreme Court Dkt. No. 19-511 ("*Facebook*"); and

    (d)    for such other and further relief as the Court deems just and proper.

This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the Declaration of Ty Bollinger and exhibits thereto, filed concurrently herewith, the pleadings and papers on file herein, and upon such matters that may or must be judicially noticed, and upon such further matters as may be presented to the Court at the time of the hearing.

**PLEASE TAKE FURTHER NOTICE** that counsel for the parties met and conferred regarding the legal arguments addressed in this Motion but were unable to resolve the issues.  The Motion is anticipated to be opposed by Plaintiff.

Case No. 4:20-cv-4375-HSG

SMRH:4815-5366-1896.1                DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION,
STRIKE CLASS CLAIMS AND/OR STAY PROCEEDINGS

1   Dated:  August 21, 2020

2                           SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

3

4                      By     _____/s/ Jay T. Ramsey_____

5                                          JAY T. RAMSEY

6                           Attorneys for TTAC PUBLISHING, LLC

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SMRH:4815-5366-1896.1   DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION,
STRIKE CLASS CLAIMS AND/OR STAY PROCEEDINGS

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ........................................................................................... 1

II.     LEGAL STANDARD .................................................................................... 3

III.    PLAINTIFF'S CLAIMS MUST BE SUBMITTED TO BINDING
        ARBITRATION ............................................................................................ 3

        A.      The Arbitrator, Not the Court, Should Determine Arbitrability .................... 3

        B.      Even if the Court Reaches Questions of Arbitrability, It Must Compel
                Arbitration ......................................................................................... 5

                1.      There is a Valid Agreement to Arbitrate ............................................. 6

                2.      The Arbitration Provision is Presumed Valid and Enforceable .......... 8

IV.     THE CLASS CLAIMS SHOULD BE STRICKEN .................................................... 9

V.      THE COURT SHOULD ISSUE A STAY OF PROCEEDINGS ............................ 12

        A.      A Stay Should Issue Pending Completion of Arbitration ............................ 12

        B.      A Stay Should Issue Pending the Supreme Court's Ruling in
                Facebook, Inc. v. Duguid et al. .......................................................... 13

VI.     CONCLUSION ........................................................................................... 14

1

# TABLE OF AUTHORITIES

2

Page(s)

3

<u>Cases</u>

4

*Allied-Bruce Terminix Cos. v. Dobson*
    513 U.S. 265 (1995) ............................................................................................ 5

5

6

*AT&T Mobility LLC v. Concepcion*
    131 S.Ct. 1740 (2011) ...................................................................................... 10

7

*AT&T Mobility LLC v. Concepcion*
    563 U.S. 333 (2011) .......................................................................................... 7

8

9

*Burton v. Nationwide Ins. Co.*
    2007 WL 3309076 (E.D. Tenn. Nov. 6, 2007) .......................................... 12

10

11

*Chavarria v. Ralphs Grocery Co.*
    733 F.3d 916 (9th Cir. 2013) ......................................................................... 8

12

*Clinton v. Jones*
    520 U.S. 681 (1997) ....................................................................................... 13

13

14

*CMAX, Inc. v. Hall*
    300 F.2d 265 (9th Cir 1962) ........................................................................ 14

15

16

*Cox v. Ocean View Hotel Corp.*
    533 F.3d 1114 (9th Cir. 2008) ....................................................................... 5

17

*Daniel v. Allstate Insurance Co.*
    2015 WL 2578553 (Tenn. Ct. App. Apr. 6, 2015) ................................... 12

18

19

*Das v. State Farm Fire & Cas. Co.*
    713 S.W.2d 318 (Tenn.Ct.App.1986) ....................................................... 12

20

*Dean Witter Reynolds, Inc. v. Byrd*
    470 U.S. 213 (1985) ......................................................................................... 3

21

22

*East v. Cash America Central Inc.*
    2018 WL 9815591 (W.D. Tenn. June 12, 2018) ...................................... 10

23

24

*Epic Systems Corp. v Lewis*
    138 S.Ct. 1612 (2018) .................................................................................. 10

25

26

*Facebook, Inc. v. Duguid et al.*
    Supreme Court Dkt. No. 19-511 ........................................................... 2, 13

27

*Green v. U.S. Xpress Enterprises, Inc.*
    434 F.Supp.3d 633 (E.D. Tenn. 2020) .................................................... 10

28

SMRH:4815-5366-1896.1

*Guthrie v. Connecticut Indem. Ass'n*
    101 Tenn. 643, 49 S.W. 829 (1899) ................................................................................ 12

*Haun v. King*
    690 S.W.2d 869 (Ten. Ct. App. 1984) ............................................................................... 8

*Hill v. Home Ins. Co.*
    22 Tenn.App. 635, 125 S.W.2d 189 (1938) .................................................................... 12

*Howsam v. Dean Witter Reynolds, Inc.*
    537 U.S. 79 (2002) ............................................................................................................ 4

*Katz v. Cellco P'Ship*
    794 F.3d 341 (2d Cir. 2015) ..................................................................................... 12, 13

*Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*
    174 F.3d 907 (1999) .......................................................................................................... 3

*Landis v. N. Am. Co.*
    299 U.S. 248 (1936) ........................................................................................................ 13

*Lewis v. UBS Fin. Servs.*
    818 F.Supp.2d 1161 (N.D. Cal. 2011) ............................................................................ 13

*Marks v. Crunch San Diego, LLC*
    904 F.3d 1041 (9th Cir. 2018) .................................................................................... 2, 13

*Matera v. Google, Inc.*
    2016 WL 454130 (N.D. Cal. Feb 5, 2016) ..................................................................... 13

*Morales v Lexxiom, Inc.*
    2010 U.S. Dist. LEXIS 151809 (C.D. Cal. Jan. 29, 2010) .............................................. 7

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*
    460 U.S. 1 (1983) ................................................................................................... 3, 7, 13

*Nguyen v. Marketsource, Inc.*
    2018 WL 2182633 (S.D. Cal. May 11, 2018) ........................................................... 13, 14

*Oracle Am., Inc. v. Myriad Group A.G.*
    724 F.3d 1069 (9th Cir 2013) ........................................................................................... 4

*Order of United Commercial Travelers Am. v. Wolfe*
    331 U.S. 586 (1947) ........................................................................................................ 11

*RDF Media Ltd. v. Fox Broadcasting Co.*
    372 F.Supp.2d 556 (C.D. Cal. 2005) ................................................................................ 9

SMRH:4815-5366-1896.1

DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION,
STRIKE CLASS CLAIMS AND/OR STAY PROCEEDINGS

*Rent-A-Center, W., Inc. v. Jackson*
    130 S.Ct. 2772 (2010) .................................................................................. 3, 4

*Rent-A-Center, West, Inc. v. Jackson*
    561 U.S. 63 (2010) ........................................................................................ 7

*Rodriguez v. Jerome's Furniture Warehouse*
    2017 WL 3131845 (S.D. Cal. July 24, 2017) ............................................. 13

*Sanders v. Apple, Inc.*
    672 F.Supp.2d 978 (N.D. Cal. 2009) ........................................................... 9

*Sharp v. Terminix International, Inc.*
    2018 WL 3520140 (W.D. Tenn. July 20, 2018) ......................................... 11

*Shearson/Am. Exp., Inc. v. McMahon*
    482 U.S. 220 (1987) ..................................................................................... 8

*Simula, Inc. v. Autoliv, Inc.*
    175 F.3d 716 (9th Cir. 1999) ........................................................................ 7

*Tullahoma Concrete Pipe Co. v. Gillespie Constr. Co. & U.S. Fidelity &*
    *Guar. Co.*
    405 S.W.2d 657 (Tenn.Ct.App.1966) ......................................................... 12

*Whittlestone, Inc. v. Handi-Craft Co.*
    618 F.3d 970 (9th Cir. 2010) ........................................................................ 9

Statutes

9 U.S.C. § 3 ............................................................................................... 2, 3, 5, 12

9 U.S.C. § 4 ...................................................................................................... 3, 5

15 U.S.C. § 7001(a)(1) .......................................................................................... 5

47 U.S.C. 227 *et seq.* ..................................................................................... 1, 2, 8

Other Authorities

AAA Consumer Arbitration Rule R-14(a) ............................................................. 4

Fed. R. Civ. P. 12(f) .............................................................................................. 9

Fed. R. Civ. P. 23(d)(1)(D) ............................................................................. 9, 11

https://thetruthaboutcancer.com (April 13, 2018) ................................................ 6

# I.     __INTRODUCTION__

On April 13, 2018, Michelle Shultz ("Plaintiff") visited defendant TTAC Publishing, LLC's ("TTAC") website and purchased a digital copy of The Truth About Pet Cancer, a documentary film offered for sale to consumers by TTAC.  *Bollinger Decl*. ¶ 7. On the checkout page of the website where Plaintiff completed her purchase, she submitted certain personal identifying information, including her first and last name, mailing address, email address, and phone number. *Id*. ¶ 8.  In connection with completing this purchase, Plaintiff explicitly acknowledged that she agreed to be bound by certain terms and conditions that were made available for Plaintiff's review at the time of checkout (the "Terms and Conditions").  *Id*. ¶¶ 9, 15.  Among the Terms and Conditions to which Plaintiff affirmatively assented was an agreement to arbitration in which Plaintiff agreed to arbitrate all claims and disputes against TTAC.  *Id*. ¶¶ 10, 12; Exhibit 1.  As part of agreement to this provision, as well as a later section of the Terms and Condition, Plaintiff also agreed to expressly waiver any right to a jury trial, as well as her right to bring claims as a representative or member or a class action.  *Id*. ¶ 13-14; Exhibit 2.

The Complaint alleges that Plaintiff received text messages sent to her cellular telephone number in violation of the Telephone Consumer Protection Act, 47 U.S.C. 227 *et seq*. ("TCPA").  *Compl*. ¶¶ 1, 41.  As such, given the fact that Plaintiff affirmatively agreed to be bound by the Terms and Conditions when she submitted her telephone number and completed her purchase on TTAC's website, and the Terms and Conditions contain a valid and enforceable agreement to arbitrate which delegates to the arbitrator the exclusive authority to resolve all disputes, this matter must be sent to the forum to which the parties agreed to adjudicate this dispute.  Plaintiff must be compelled to abide by the bargained-for-terms to which she agreed.

TTAC is also entitled to strike some or all of the putative class claims for the same reasons it is entitled to relief against Plaintiff.  The only possible recipients of messages similar to those received by Plaintiff are individuals who, like Plaintiff, agreed to the website terms and conditions as part of completing a purchase. *Bollinger Decl*. ¶¶ 6, 16.

1   Thus, they too agreed to: (i) submit any claims they have against TTAC to mandatory

2   arbitration; (ii) waive the right to participate in a class action against TTAC; and (iii) a

3   contractually shortened statute of limitations period for any claims they have against

4   TTAC.[1]

5          Finally, TTAC requests a stay of proceedings on two separate bases.  First, upon an

6   Order appropriately enforcing the parties' arbitration agreement, TTAC requests that the

7   stay be granted pending the completion of final and binding arbitration pursuant to 9

8   U.S.C. § 3.  Alternatively, if for any reason the Court opts not to enforce the parties'

9   agreed-upon forum for adjudication of this dispute, TTAC requests that the proceedings be

10  stayed pending the Supreme Court's ruling in *Facebook, Inc. v. Duguid et al.*, Supreme

11  Court Dkt. No. 19-511 ("*Facebook*").  The Supreme Court granted certiorari on the issue

12  of the correct interpretation of the term automatic telephone dialing system ("ATDS") for

13  TCPA purposes. A stay pending this ruling is appropriate because (i) a main element of

14  Plaintiff's *prima facie* case is establishing that the disputed messages were sent through

15  use of an ATDS, see 47 U.S.C. §227(b)(1)(A); (ii) it is the Ninth Circuit's interpretation of

16  the term in *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018) that has been

17  directly challenged by the petition granted by the Supreme Court; and (iii) through

18  conservation of scarce resources that would otherwise be wasted engaging in lengthy,

19  complex, and costly discovery and/or motion practice concerning an issue that may

20  ultimately be mooted by the high court, the parties and the Court will greatly benefit from

21  the Supreme Court's clarification on the proper interpretation of this statutory term.

22         For the foregoing reasons, as detailed further herein, TTAC requests that the Court

23  grant the Motion.

24

25

26

—————————————————

27  [1]     As a result of the contractually shortened statute of limitations, any putative class

28  member who received a message prior to June 30, 2019 do not have a right to bring any
    claims against TTAC in any forum, whether at arbitration or as part of this proceeding.

## II.   LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed with arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4 (emphasis added).  Thus, a court's role under the FAA is limited to determining: (1) whether a valid agreement to arbitrate exists and if it does; (2) whether the agreement encompasses the dispute at issue.  *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (1999).  If the response is affirmative on both counts, then the FAA requires the court to enforce the arbitration agreement in accordance with its terms.  9 U.S.C. §§ 3, 4: *see also Kiefer* at 909.  The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).  "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

## III.   PLAINTIFF'S CLAIMS MUST BE SUBMITTED TO BINDING ARBITRATION

The Court should compel arbitration of this dispute for at least two independent reasons: (1) the arbitrator, not the Court, should determine arbitrability; and (2) even if the Court reaches the question of arbitrability, it must still compel arbitration.

### A.   The Arbitrator, Not the Court, Should Determine Arbitrability

The arbitrator, not the Court, should decide whether the parties entered into a valid arbitration agreement and the scope of that agreement.  Federal law permits parties to arbitrate the two threshold questions of arbitrability, namely whether the arbitration agreement is valid and whether its scope covers the claims at issue.  *Rent-A-Center, W., Inc. v. Jackson*, 130 S.Ct. 2772, 2777 (2010).  "[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether

-3-

1  their agreement covers a particular controversy." *Id.*  To do so, the parties must "clearly

2  and unmistakably" express an intent to arbitrate gateway questions of arbitrability in their

3  agreement.  *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002).

4          Here, the language of the arbitration provision is "clear and unmistakable" evidence

5  of the parties' intent to arbitrate threshold questions of arbitration because of the

6  incorporation of American Arbitration Association's ("AAA") rules of arbitration into the

7  arbitration clause.  Courts routinely hold that by explicitly incorporating the rules of AAA

8  into an arbitration agreement, the parties clearly and unmistakably agree to submit the

9  threshold questions of arbitrability to arbitration.  In fact, "[v]irtually every circuit to have

10  considered the issue has determined that incorporation of the American Arbitration

11  Association's (AAA) arbitration rules constitutes clear and unmistakable evidence that the

12  parties agreed to arbitrate arbitrability."  *Oracle Am., Inc. v. Myriad Group A.G.*, 724 F.3d

13  1069 (9th Cir 2013).

14          Indeed, the AAA rules provide: "The arbitrator shall have the power to rule on his

15  or her own jurisdiction, including any objections with respect to the existence, scope of

16  validity of the arbitration agreement or the arbitrability of any claim or counterclaim."

17  AAA Consumer Arbitration Rule R-14(a).  The Terms and Conditions to which Plaintiff

18  agreed explicitly incorporate the AAA arbitration rules in the arbitration agreement.

19  Specifically the arbitration provision provides in relevant part as follows:

20          . . . A single, neutral arbitrator will resolve Claims. The arbitrator will be
            either a lawyer with at least ten (10) years' experience or a retired or former

21          judge, selected in accordance with the rules of the American Arbitration
            Association. ***The arbitration will follow the procedures and rules of the***

22          ***American Arbitration Association which are in effect on the date the***
            ***arbitration is filed*** unless those procedures are inconsistent with this User

23          Agreement, in which case this User Agreement will prevail. (emphasis
            added).

24  Bollinger Decl., Exhibit 1.

25

26

27

28

SMRH:4815-5366-1896.1

Case No. 4:20-cv-4375-HSG
DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION,
STRIKE CLASS CLAIMS AND/OR STAY PROCEEDINGS

1      As such, the issue of whether a valid arbitration agreement exists is expressly left

2  for the arbitrator to resolve, and the portion of this Motion seeking to compel Plaintiff's

3  claim to arbitration must be granted accordingly.

4      **B.      Even if the Court Reaches Questions of Arbitrability, It Must Compel**

5           **Arbitration**

6      A reasoned analysis of the subject arbitration agreement indicates a "clear and

7  unmistakable" intent of Plaintiff and TTAC to arbitrate threshold questions of arbitrability.

8  However, should the Court reach the issue of the validity of the arbitration agreement, it

9  should still grant TTAC's application.

10     Because the FAA mandates that "district courts shall direct the parties to proceed to

11 arbitration on issues as to which an arbitration agreement has been signed[,]" the FAA

12 limits courts' involvement to "determining (1) whether a valid agreement to arbitrate exists

13 and, if it does, (2) whether the agreement encompasses the dispute at issue." *Cox v. Ocean*

14 *View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (quoting *Chiron Corp. v. Ortho*

15 *Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir.2000)).  When these conditions are

16 satisfied, the Court must enforce the agreement to arbitrate. 9 U.S.C. §§ 3, 4.  As

17 demonstrated herein, these conditions are satisfied because the arbitration agreement falls

18 within the FAA, is valid and enforceable, and encompasses the entire dispute.

19     The FAA applies to the instant arbitration clause because it is a written provision in

20 a contract involving commerce within the meaning of Section 2 thereof.  A "written

21 provision . . . in a contract" includes electronic contracts such as the subject Terms and

22 Conditions.  *See* 15 U.S.C. § 7001(a)(1) ("a signature, contract, or other record relating to

23 such transaction may not be denied legal effect, validity, or enforceability solely because it

24 is in electronic form").  Moreover, the Supreme Court has interpreted the phrase

25 "involving commerce" very broadly, holding that it extends beyond persons and activities

26 within the flow of interstate commerce to include anything that affects commerce.  *Allied-*

27 *Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277 (1995).  Here, it is plain that the Terms

28

DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION,
STRIKE CLASS CLAIMS AND/OR STAY PROCEEDINGS

and Conditions affect commerce, as they governed Plaintiff's purchase of a documentary from TTAC.

### 1.     There is a Valid Agreement to Arbitrate

As detailed by the accompanying declaration of TTAC's Chief Financial Officer, Ty Bollinger, Plaintiff completed a purchase on TTAC's website, https://thetruthaboutcancer.com, on April 13, 2018. *Bollinger Decl.* ¶¶ 7-15.  On the checkout page of the website, Plaintiff submitted personal information including, but not limited to, her name, mailing address, email address, and telephone number. *Id*. ¶ 8. In conjunction with submitting such information, Plaintiff also affirmatively assented to the website Terms and Conditions. *Id*. ¶ 15.  Those Terms and Conditions contain an explicit agreement to arbitrate, to which Plaintiff assented.  Specifically the arbitration agreement provides, *inter alia*, as follows:

> As each country has laws that may differ from those of Tennessee, by accessing our website, you agree that the statutes and laws of Tennessee, without regard to the conflict of laws and the United Nations Convention on the International Sales of Goods, will apply to all matters relating to the use of this website and the purchase of any products or services through this site. While we will make reasonable efforts to resolve any disagreements you may have with Company, if these efforts fail you agree that all claims, disputes or controversies against Company arising out of this User Agreement, or the purchase of any products or services ("Claims") are subject to fixed and binding arbitration (except for matters that may be taken to small claims court), no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek.  This includes Claims based on contract, tort (including intentional tort) fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; and Claims made independently or with other claims.  The party filing an arbitration must submit Claims to the American Arbitration Association and follow its rules and procedures for initiating and pursuing an arbitration. Any arbitration hearing that you attend will be held at a place chosen by the American Arbitration Association in the same city as the U.S. District Court closest to your then current residential address, or at some other place to which you and Company agree in writing, and the arbitrator shall apply Tennessee [sic] law consistent with the Federal Arbitration Act.  You shall not be entitled to join or consolidate Claims in arbitration by or against other users or to arbitrate any Claim as a representative or member of a class or in a private attorney general capacity.

*Bollinger Decl.* ¶ 10; Exhibit 1.

1    Access to the terms and conditions, which include the above arbitration agreement,

2  was provided to Plaintiff through a clickable hyperlink contained within an express,

3  conspicuous textual notice that read "I agree to the terms and conditions," located directly

4  above the "Complete Purchase" button which Plaintiff clicked to manifest her assent to the

5  terms and conclude her transaction on the website. Given that the website expressly and

6  conspicuously alerted Plaintiff to the Terms and Conditions and provided her with a

7  hyperlink to those Terms and Conditions, each of which were within the line of sight of the

8  button that she clicked to complete her purchase, the circumstances demand that the Court

9  find that a binding agreement to arbitrate exists.

10    Furthermore, Plaintiff's claims fall within the scope of the arbitration agreement.

11  The FAA "embodies a clear federal policy in favor of arbitration." *Simula, Inc. v. Autoliv,*

12  *Inc.*, 175 F.3d 716, 719 (9th Cir. 1999); See also *AT&T Mobility LLC v. Concepcion*, 563

13  U.S. 333, 339 (2011); *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67-68 (2010).

14  Owing to this clear policy, courts must indulge every presumption "in favor of arbitration"

15  when determining whether a claim falls within the scope of an arbitration provision.

16  *Moses H. Cone Mem' Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 (1983).  Moreover,

17  agreements pursuant to which parties agree that the arbitration provision will govern "all"

18  claims, disputes, or controversies are deemed to cover all claims.  *See Concepcion*, 563

19  U.S. 333 (2011) (enforcing arbitration agreement governing "all" disputes that included

20  class action waiver); *Morales v Lexxiom, Inc.*, 2010 U.S. Dist. LEXIS 151809, *18-19

21  (C.D. Cal. Jan. 29, 2010) (enforcing arbitration agreement governing "any" dispute

22  because the language is "all encompassing" and jury trial waiver set forth in all caps

23  "could not be clearer"). Here, the arbitration agreement in the Terms and Conditions

24  similarly indicates an intent by the parties that its scope governs all claims. First, it defines

25  the universe of claims subject to fixed and binding arbitration as "all claims, disputes or

26  controversies against [TTAC]".  It then goes on to delineate that the arbitration agreement

27  applies to the following forms of claims: "counterclaims, cross-claims, third-party claims,

28  interpleaders or otherwise; and Claims made independently or with other claims."  Finally,

Case No. 4:20-cv-4375-HSG

DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION, STRIKE CLASS CLAIMS AND/OR STAY PROCEEDINGS

1   the types of claims that the parties agreed to submit to arbitration is unbounded by the legal

2   theory upon which the claim is based: "no matter what legal theory they are based on or

3   what remedy (damages, or injunctive or declaratory relief) they seek.  This includes

4   Claims based on contract, tort (including intentional tort) fraud, agency, your or our

5   negligence, statutory or regulatory provisions, or any other sources of law."

6        Thus, the language used by the arbitration agreement is broad and comprehensive.

7   It indicates the intent of the parties to encompass all claims against TTAC, including those

8   under the TCPA arising from Plaintiff's purchase on the website.

9                    **2.    *The Arbitration Provision is Presumed Valid and Enforceable***

10       An arbitration agreement which is governed by the FAA, like the one here, "is

11  presumed to be valid and enforceable."  *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S.

12  220, 26-27 (1987).  Though the FAA applies, the statute is construed to permit the

13  application of state law to invalidate arbitration agreements only under certain limited

14  circumstances such as "fraud, duress, or unconscionability."  *Chavarria v. Ralphs Grocery*

15  *Co.*, 733 F.3d 916, 921-22 (9th Cir. 2013).  The Terms and Conditions provide that: ". . .

16  you agree that the statutes and laws of Tennessee, without regard to the conflict of law and

17  the United Nations Convention on the International Sales of Goods, will apply to all

18  matters relating to the use of this website and the purchase of any products or services

19  through this site."  *Bollinger Decl.*, Exhibit 1.

20       Under Tennessee law, a court will only refuse to enforce a contract on the ground of

21  unconscionability when the "inequality of the bargain is so manifest as to shock the

22  judgment of a person of common sense, and where the terms are so oppressive that no

23  reasonable person would make them on the one hand, and no honest and fair person would

24  accept them on the other."  *Haun v. King*, 690 S.W.2d 869, 872 (Ten. Ct. App. 1984)

25  (quoting *Brenner v. Little Red Schoolhouse*, 274 S.E.2d 206, 210 (1981)).

26       As it relates to the instant Terms and Conditions, and specifically the arbitration

27  agreement therein, any argument concerning unconscionability would lack merit.  There is

28  no manifest inequities in the terms, let alone ones that are so oppressive that nobody would

-8-

accept them. The arbitration agreement does not preclude Plaintiff from asserting any claims that she has against the TTAC; it merely includes a mutually agreeable forum to adjudicate those claims.  Moreover, the arbitration agreement preserves Plaintiff's right to pursue remedies outside of arbitration at small claims court.  Furthermore, the arbitration agreement does not impose prohibitive costs on Plaintiff; not only do AAA's Rules provide for recovery of fees and costs at the discretion of the arbitrator, but the arbitration agreement in the website Terms and Conditions, TTAC agreed that a party may recover any or all expenses from the other party if the arbitrator so determines when applying applicable law. *Bollinger Decl.*, Exhibit 1.  Finally, the Terms and Conditions bind both Plaintiff and TTAC.  As such, because the arbitration agreement is not unconscionable, it is valid and enforceable and mandates arbitration of Plaintiff's claims.  TTAC's Motion should be granted accordingly.

## IV.   <u>THE CLASS CLAIMS SHOULD BE STRICKEN</u>

Fed. R. Civ. P. 23(d)(1)(D) provides that the Court may issue orders that require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly.  Similarly, although motions to strike under Fed. R. Civ. P. 12(f) are generally disfavored at the early pleading stages, their function is to avoid the expenditure of time and money that arises from litigation of spurious issues by dispensing with those issues prior to trial.  *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010).

Cognizant of the general rule that a motion to strike class allegations under Fed. R. Civ. P. 12(f) is disfavored, it is nevertheless proper where, as here, it is obvious that this matter cannot proceed on a class-wide basis, the questions of law are clear, and there are no set of circumstances under which the class claims can succeed.  *Sanders v. Apple, Inc.*, 672 F.Supp.2d 978, 990 (N.D. Cal. 2009); see also *RDF Media Ltd. v. Fox Broadcasting Co.*, 372 F.Supp.2d 556, 566 (C.D. Cal. 2005).

As part of her agreement to submit all claims and disputes against TTAC to mandatory binding arbitration, Plaintiff also agreed to waive the right to either represent a

1    class or to participate in a class action.  In fact, Plaintiff agreed to this in two separate

2    instances in the Terms and Conditions, *inter alia*, as follows:

3        **Governing Law and Dispute Resolution; Arbitration**

4        . . . Any arbitration hearing that you attend will be held at a place chosen by
         the American Arbitration Association in the same city as the U.S. District

5        Court closest to your then current residential address, or at some other place
         to which you and Company agree in writing, and the arbitrator shall apply

6        Tennessee [sic] law consistent with the Federal Arbitration Act.  You shall
         not be entitled to join or consolidate Claims in arbitration by or against other

7        users or to arbitrate any Claims as a representative or member of a class or in
         a private attorney general capacity . . .

8

9    *Bollinger Decl.*, Exhibit 1.

10       **Class Action Waiver**

11       YOU AGREE THAT, BY ENTERING INTO THIS USER AGREEMENT,
         YOU AND COMPANY ARE EACH WAIVING THE RIGHT TO A

12       TRIAL BY JURY OR TO PARTICIPATE IN A CLASS ACTION,
         COLLECTIVE ACTION, PRIVATE ATTORNEY GENERAL ACTION,

13       OR OTHER REPRESENTATIVE PROCEEDING OF ANY KIND.
         CLAIMS AND REMEDIES SOUGHT AS PART OF A CLASS ACTION,

14       PRIVATE ATTORNEY GENERAL OR OTHER REPRESENTATIVE
         ACTION ARE SUBJECT TO ARBITRATION ONLY ON AN

15       INDIVIDUAL (NON-CLASS, NON-REPRESENTATIVE) BASIS, AND
         THE ARBITRATOR MAY AWARD RELIEF ONLY ON AN

16       INDIVIDUAL (NON-CLASS, NON-REPRESENTATIVE) BASIS.

17   *Id.*, Exhibit 2.

18       As the Supreme Court has explained, the "principal purpose of the [FAA] is to

19   ensure private arbitration agreements are enforced according to the terms."  *AT&T*

20   *Mobility LLC v. Concepcion*, 131 S.Ct. 1740, 1748 (2011). The Supreme Court

21   subsequently affirmed the validity of private agreements which contain waivers of the right

22   to participate in class or collective actions in *Epic Systems Corp. v Lewis*, 138 S.Ct. 1612

23   (2018), which courts sitting in Tennessee have followed to enforce contractual class action

24   waiver clauses like the one at issue.  *See, e.g., East v. Cash America Central Inc.*, 2018

25   WL 9815591, *4 (W.D. Tenn. June 12, 2018) ("Because this Court finds that the holding

26   of Epic Systems explicitly deems waivers of class or collective action court proceedings

27   valid and enforceable, Plaintiff's argument that the waiver at issue violates the NRLA and

28   is thus unenforceable must fail."); *Green v. U.S. Xpress Enterprises, Inc.*, 434 F.Supp.3d

633 (E.D. Tenn. 2020); *Sharp v. Terminix International, Inc.*, 2018 WL 3520140 (W.D. Tenn. July 20, 2018).

Thus, parties may agree to class-action waivers. Therefore, in accordance with the express terms of the arbitration agreement and the class action waiver incorporated therein, Plaintiff has agreed to mandatory arbitration on an individual basis and likewise waived the right to participate in a class action. Importantly too, Plaintiff is not alone in having agreed to these class action waivers. The only recipients of text messages similar to the ones allegedly received by Plaintiff agreed, like her, to waive his/her right to participate in a class action in favor of submitting any claim to mandatory and binding arbitration. *Bollinger Decl*. ¶ 6, 16. Thus, the persons that might otherwise be included in the putative class's definition cannot join the class. Accordingly, the putative class claims must be stricken.

Alternatively, in the event that the Court declines to strike the class claims notwithstanding the universal waiver of rights to class participation among the putative members, then the pleading must nevertheless be amended pursuant to Fed. R. Civ. P. 23(d)(1)(D) by virtue of the contractually shortened statute of limitations period that was likewise agreed to by putative members. Specifically, the Terms and Conditions provide, *inter alia*, as follows:

> . . .Any Claim you have must be commenced within one (1) year after the date the Claim arises . . .

*Bollinger Decl*. ¶ 11, Exhibit 1.

As currently plead, Plaintiff seeks to represent a class of persons that received a text message by or on behalf of TTAC over a period dating back up to four (4) years prior to the date of the Complaint's filing. *Compl*. ¶ 28. This definition, however, inappropriately encompasses persons whose claims are time-barred pursuant to the Terms and Conditions to which they agreed. It is well-settled that parties to a contract may agree to an abbreviated period of limitations different from the period authorized by statute so long as it is reasonable. *See Order of United Commercial Travelers Am. v. Wolfe*, 331 U.S. 586,

608 (1947). Tennessee courts in particular have long upheld contractual limitations that reduce the statutory period for filing suit. *See, e.g., Guthrie v. Connecticut Indem. Ass'n*, 101 Tenn. 643, 49 S.W. 829, 830 (1899); *Hill v. Home Ins. Co.*, 22 Tenn.App. 635, 125 S.W.2d 189, 192 (1938). Similarly, Tennessee courts have enforced contracts which contain abbreviated statute of limitations period of one year, like that contained in the Terms and Conditions. *See e.g., Daniel v. Allstate Insurance Co.*, 2015 WL 2578553 (Tenn. Ct. App. Apr. 6, 2015); *Tullahoma Concrete Pipe Co. v. Gillespie Constr. Co. & U.S. Fidelity & Guar. Co.*, 405 S.W.2d 657, 664 (Tenn.Ct.App.1966) (holding that provision in contract that suit must be brought within one year after sub-contractor ceased work on project was valid); *Das v. State Farm Fire & Cas. Co.*, 713 S.W.2d 318, 324 (Tenn.Ct.App.1986) (holding that dismissal of plaintiffs' suit was justified by their failure to sue within one year after insurance company's first denial of liability); *Hill v. Home Ins. Co.*, 125 S.W.2d 189, 192 (Tenn.Ct.App.1938) (holding that contractual limitation requiring suit on fire policy to be commenced within one year after date of loss was valid and enforceable). *Burton v. Nationwide Ins. Co.*, 2007 WL 3309076 (E.D. Tenn. Nov. 6, 2007).

Consequently, because any person that might have received a text message purportedly on behalf of TTAC would have done so as a result of a purchase they completed on TTAC's website, *Bollinger Decl.* ¶ 6, and therefore agreed to the contractually shortened statute of limitations, the putative class's definition must be amended to exclude any person that received a text message prior to June 30, 2019.

## V.   <u>THE COURT SHOULD ISSUE A STAY OF PROCEEDINGS</u>

### A.   <u>A Stay Should Issue Pending Completion of Arbitration</u>

The proceedings must be stayed pending resolution of Plaintiff's claims at arbitration. *See Katz v. Cellco P'Ship*, 794 F.3d 341, 343 (2d Cir. 2015) (the FAA "requires a stay of proceedings when all claims are referred to arbitration and a stay [is] requested"). Under Section 3 of the FAA, if a suit is filed in a district court upon any issue that is subject to a written arbitration agreement, the court shall "stay the trial of the action

1  until such arbitration has been had in accordance with the terms of the agreement." *Lewis*

2  *v. UBS Fin. Servs.*, 818 F.Supp.2d 1161, 1169 (N.D. Cal. 2011) (quoting 9 U.S.C. § 3).

3  The rationale for a stay is that dismissal would convert the decision into an appealable

4  order, thus controverting the FAA's policy "to move the parties to an arbitrable dispute out

5  of court and into arbitration as quickly and easily as possible." *Katz*, 794 F.3d at 346;

6  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983) (moving

7  parties out of court and into arbitration should occur "as quickly and easily as possible").

8  Accordingly the Court should stay this litigation pending arbitration.

9      **B.**    **A Stay Should Issue Pending the Supreme Court's Ruling in Facebook,**

10          **Inc. v. Duguid et al.**

11      A district court has inherent authority to "control the disposition of the causes on its

12  docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v.*

13  *N. Am. Co.*, 299 U.S. 248, 254 (1936); see also Clinton v. Jones, 520 U.S. 681, 706 (1997)

14  ("The District Court has broad discretion to stay proceedings as an incident to its power to

15  control its own docket.").  District courts also frequently grant such stays where a court

16  whose precedent binds them, particularly the Supreme Court, will soon decide a key issue

17  related to the pending case. *See e.g., Matera v. Google, Inc.*, 2016 WL 454130 (N.D. Cal.

18  Feb 5, 2016); *Nguyen v. Marketsource, Inc.*, 2018 WL 2182633 (S.D. Cal. May 11, 2018);

19  *Rodriguez v. Jerome's Furniture Warehouse*, 2017 WL 3131845 (S.D. Cal. July 24, 2017).

20  The Supreme Court granted certiorari in *Facebook, Inc. v. Duguid et al.*, Supreme Court

21  Dkt. No. 19-511 on the issue of whether the definition of ATDS encompasses any device

22  that can "store" and "automatically dial" telephone numbers, even if the device does not

23  "us[e] a random or sequential number generator."  The petition for certiorari filed by

24  Facebook, Inc. is a direct challenge to the Ninth Circuit's interpretation of the term in

25  *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018).

26      In determining whether to issue a stay, courts weigh the following interests: "the

27  possible damage which may result from the granting of a stay, the hardship or inequity

28  which a party may suffer in being required to go forward, and the orderly course of justice

-13-

measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir 1962).  These interests weigh in favor of a stay here. Shultz alleges that TTAC is responsible for text messages that were purportedly unlawfully sent to her using an ATDS. *Compl.* ¶¶ 20, 39. A stay would allow discovery to be tailored to the guidance ultimately provided by the Supreme Court on the key issue of the capabilities required of dialing equipment in order to be deemed an ATDS.  There is no more clear example of the efficiencies gained by a stay than in the context of expert reports and/or expert discovery, as the stay should be anticipated to eliminate the time and expense of likely development of alternative opinions to account for the ruling issued by the Supreme Court.  In addition to discovery complications without a stay, the absence of a stay is likely to lead to the briefing of substantive motions analyzed under one ATDS definition, but which would require substantial supplemental briefing in the event that the Supreme Court rules in a manner that adopts a differing ATDS definition.  In contrast with these examples of actual prejudice resulting from a lack of one, there would be no prejudice from a stay.  This litigation is in its nascent stages and, notwithstanding Plaintiff's conclusory allegations to the contrary, there is no ongoing harm for which to be concerned.  The messages of which she complains were allegedly received in November 2019, *Compl.* ¶ 19, and she does not allege to have received any messages subsequent.

There is no reason to continue litigating here before the Supreme Court resolves Facebook.  As the Court stated in *Nguyen*, it would be "an extraordinary waste of time and money" to continue litigation the case "only to have to do it all again because the experts, the parties and the Court were proceeding under a legal framework that the [Supreme Court] determined did not apply."  *Nguyen*, 2018 WL 218633 at *7.

## VI.   <u>CONCLUSION</u>

For the foregoing reasons, TTAC respectfully requests that the Motion be granted and the Court enter an Order compelling arbitration of Plaintiff's claims on an individual

1   basis, striking the putative class claims from the Complaint, staying the proceedings, and

2   for such other and further relief as the Court deems just and proper.

3   Dated:  August 21, 2020

4                                       SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

5

6                           By   _____
                                          /s/ Jay T. Ramsey

7                                        JAY T. RAMSEY

8                                   Attorneys for TTAC PUBLISHING, LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28