1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
     A Limited Liability Partnership
2    Including Professional Corporations
   JAY T. RAMSEY, Cal. Bar No. 273160
3  1901 Avenue of the Stars, Suite 1600
   Los Angeles, California 90067-6055
4  Telephone:  310.228.3700
   Facsimile:  310.228.3701
5  E mail       jramsey@sheppardmullin.com

6  KLEIN MOYNIHAN TURCO LLP

7  Neil Asnen (*pro hac vice* application to be filed)

8  450 Seventh Avenue, 40th Floor
   New York, New York 10123
9  TEL: 212-246-0900
   FAX: 212-216-9559
10 nasnen@kleinmoynihan.com

11 Attorneys for TTAC PUBLISHING, LLC

12

13                UNITED STATES DISTRICT COURT

14              NORTHERN DISTRICT OF CALIFORNIA

15

16 MICHELLE SHULTZ, individually and        Case No. 4:20-cv-4375-HSG
   on behalf of others similarly situated,
17                                          **DEFENDANT'S NOTICE OF
                Plaintiff,                   MOTION AND MOTION TO STAY**
18
           v.                               **Date:  Jan. 7. 2021**
19                                          **Time:  2:00 p.m.**
   TTAC PUBLISHING, LLC,                    **Ctrm:  2, 4th Floor**
20
                Defendant.                  *Honorable Haywood S. Gilliam, Jr.*
21

22

23

24

25

26

27

28

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on January 7, 2020 at 2:00 p.m. or as soon thereafter as counsel may be heard by the above-captioned Court, located at 1301 Clay Street, Oakland, CA 94612, Courtroom 2 – 4th Floor, Honorable Haywood S. Gilliam, Jr. presiding, Defendant TTAC Publishing, LLC will and hereby do move the Court for an order staying the action pending resolution of the appeal filed by TTAC regarding the Court's order denying TTAC's motion to compel arbitration.

This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the Declaration of Jay T. Ramsey and exhibits thereto, filed concurrently herewith, the pleadings and papers on file herein, and upon such matters that may or must be judicially noticed, and upon such further matters as may be presented to the Court at the time of the hearing.

Dated:  December 2, 2020      SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By      _____  
        */s/ Jay T. Ramsey*  
        JAY T. RAMSEY

        Attorneys for TTAC PUBLISHING, LLC

1

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION ...................................................................................... 1

II.     FACTUAL BACKGROUND ..................................................................... 1

III.    ARGUMENT ............................................................................................. 2

        A.      Applicable Legal Standard............................................................. 2

        B.      The Court Should Stay Litigation Pending the Ninth Circuit's
                Resolution of Defendant's Appeal Regarding Arbitration .................... 3

                1.      There is a Likelihood of Defendant's Success on Appeal............ 3

                2.      Defendant will be Irreparably Harmed Absent a Stay ................ 6

                3.      The Third and Fourth Factors Also Weigh in Favor of a
                        Stay .................................................................................. 8

IV.     CONCLUSION ......................................................................................... 9

SMRH:4831-4644-9363.1

MOTION TO STAY

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

<u>**Federal Cases**</u>

4

*AG Edward & Sons, Inc. v. McCullough*
  967 F.2d 1401 (9th Cir. 1992)......................................................................................9

5

6

*Alascom, Inc. v. ITT North Elec. Co.*
  727 F.2d 1419 (9th Cir. 1984)......................................................................................7

7

8

*Crawford v. Beachbody, LLC*
  2014 WL 6606563 (S.D. Cal. Nov. 5, 2014)...............................................................4

9

10

*Echevarria v. Aerotek, Inc., Zaborowski v. MHN Government Services, Inc.*
  2013 WL 1832638 (N.D. Cal. May 1, 2013) ...............................................................7

11

12

*Errington v. Time Warner Cable Inc.*
  2016 WL 2930696 (C.D. Cal. May 18, 2016)..............................................................8

13

14

*Golden Gate Rest. Ass'n v. City and Cnty. Of S.F.*
  512 F.3d 1112 (9th Cir. 2008) ......................................................................................6

15

16

*Guifu Li et al. v. A Perfect Franchise, Inc.*
  2011 WL 2293221 (N.D. Cal. June 8, 2011) ...............................................................3

17

18

*Laster v. T-Mobile USA, Inc.*
  2008 WL 5377635 (S.D. Cal. Nov. 4, 2008)................................................................9

19

20

*Leiva-Perez v. Holder*
  640 F.3d 962 (9th Cir. 2011) ...................................................................................2, 3

21

22

*McCauley v. Halliburton Energy Servs., Inc.*
  413 F.3d 1158 (10th Cir. 2005).....................................................................................2

23

24

*Mohamed v. Uber Technologies, et al.*
  115 F.Supp.3d 1024 (N.D. Cal. 2015)..........................................................................2

25

26

*Morse v. Servicemaster Global Holdings, Inc.*
  2013 WL 123610 (N.D. Cal. Jan. 8, 2013) ..................................................................2

27

28

*Murphy v. DIRECTV, Inc.*
  2008 WL 8608808 (C.D. Cal. July 1, 2008) ................................................................7

*Nevarez v. Forty Niners Football Co., LLC*
    2017 WL 3492110 (N.D. Cal. Aug. 15, 2017) ........................................................ 4

*Nguyen v. Barnes & Noble Inc.*
    763 F.3d 1171 (9th Cir. 2014) ................................................................. 4, 5, 6

*Nken v. Holder*
    556 U.S. 418 (2009) ............................................................................ 3

*Rodriguez v. Experian Servs. Corp.*
    2015 WL 12656919 (C.D. Cal. Oct. 5, 2015) (Ramsey Decl. Ex. 3.) ................... 5

*Sample v. Brookdale Senior Living Communities, Inc.*
    2012 WL 195175 (W.D. Wash. Jan 23, 2012) ....................................................... 9

*Ward v. Estate of Goosen*
    2014 WL 7273911 (N.D. Cal. Dec, 2014) .......................................................... 7

SMRH:4831-4644-9363.1

MOTION TO STAY

1  I.      **INTRODUCTION**

2          On October 26, 2020, the Court issued an order denying Defendant TTAC

3  Publishing, LLC's ("Defendant" or "TTAC") motion to compel arbitration (the

4  "Order"). Dkt No. 23.  By this motion, Defendant seeks an order staying further

5  proceedings in this Court while the appeal is pending.  Because TTAC can make a

6  strong showing on the merits of its appeal, as detailed further below, in order to

7  ensure that it does not suffer the irreparable harm of the lost benefits arbitration by

8  continuing the litigation in the absence of a stay, the Court should stay these

9  proceedings pending Defendant's appeal.  Such a stay will further conserve valuable

10  resources, of both the parties and the Court.

11  II.     **FACTUAL BACKGROUND**

12          As set forth in TTAC's motion to compel arbitration, on April 13, 2018,

13  Michelle Shultz ("Plaintiff") visited TTAC's website and purchased a digital copy

14  of The Truth About Pet Cancer, a documentary film offered for sale to consumers

15  by TTAC.  Dkt. No. 14-1 ¶ 7.  On the checkout page of the website where Plaintiff

16  completed her purchase, she submitted certain personal identifying information,

17  including her first and last name, mailing address, email address, and phone number.

18  *Id.* ¶ 8.  In connection with completing this purchase, Plaintiff explicitly

19  acknowledged that she agreed to be bound by certain terms and conditions that were

20  made available for Plaintiff's review at the time of checkout (the "Terms and

21  Conditions").  *Id.* ¶¶ 9, 15.  Among the Terms and Conditions to which Plaintiff

22  affirmatively assented was an agreement to arbitration in which Plaintiff agreed to

23  arbitrate all claims and disputes against TTAC.  *Id.* ¶¶ 10, 12; Exhibit 1.  As part of

24  agreement to this provision, as well as a later section of the Terms and Condition,

25  Plaintiff also agreed to, among other things, waive her right to bring claims as a

26  representative or member or a class action.  *Id.* ¶ 13-14; Dkt. No. 14-2.  Owing to

27  the parties' bargained-for agreement that Plaintiff's dispute would be adjudicated

28

SMRH:4831-4644-9363.1

Case No. 4:20-cv-4375-HSG

MOTION TO STAY

1  through arbitration on an individual basis, Defendant moved to compel her claims to

2  the appropriate arbitral forum.

3        On October 26, 2020, the Court issued an order denying Defendant's motion

4  to compel arbitration (the "Order"). Dkt No. 23.  On November 24, 2020, Defendant

5  filed a timely notice of appeal of the Order.  Dkt No. 26.

6  **III.   ARGUMENT**

7        **A.     Applicable Legal Standard**

8        The Ninth Circuit is in the extreme minority of circuits which otherwise

9  automatically stay a case when an appeal is taken from a denial of a motion to

10  compel arbitration, because those circuits hold that such an appeal divests the

11  district court of jurisdiction.  *See, e.g., McCauley v. Halliburton Energy Servs., Inc.*,

12  413 F.3d 1158, 1160-63 (10th Cir. 2005).  In contrast, the Ninth Circuit leaves the

13  decision of whether to issue a stay pending such an appeal to the discretion of the

14  district court, guided by sound legal principles.  *See Mohamed v. Uber*

15  *Technologies, et al.*, 115 F.Supp.3d 1024, 1027 (N.D. Cal. 2015) (*citing Nken v.*

16  *Holder*, 556 U.S. 418, 433-34 (2009)).   In determining whether a stay should issue,

17  courts should consider four factors:

18                        (1) Whether the stay applicant has made a strong showing
that [it] is likely to succeed on the merits; (2) whether the
19                        application will be irreparable injured absent a stay; (3)
whether issuance of the stay will substantially injure the
20                        other parties interested in the proceeding; and (4) whether
the public interest favors a stay.

21

22  *Leiva-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011) *(citing Nken*, 556 U.S. at

23  434).

24        These factors "are considered on a continuum."  For example, where a

25  showing that the appeal raises serious legal issues, rather than a Defendant

26  demonstrating a strong showing on the merits, then the balance of hardships should

27  tilt in its favor in order to justify a stay. *Morse v. Servicemaster Global Holdings,*

28

1    *Inc.*, 2013 WL 123610, *2 (N.D. Cal. Jan. 8, 2013) (*citing Leiva-Perez*, 640 F.3d at

2    967).

3              **B.      The Court Should Stay Litigation Pending the Ninth Circuit's**

4                        **Resolution of Defendant's Appeal Regarding Arbitration**

5                        *1.       There is a Likelihood of Defendant's Success on Appeal*

6              In order to satisfy the first *Nken* factor, the moving party need not show that

7    "success on appeal is more likely than not," *Guifu Li et al. v. A Perfect Franchise,*

8    *Inc.*, 2011 WL 2293221, *3 (N.D. Cal. June 8, 2011), if it can make a "strong

9    showing" on the merits, *Leiva-Perez*, 640 F.3d at 964.  Here, notwithstanding this

10   Court's conclusions in the Order, Defendant has a likelihood of success on appeal.

11             As an initial matter, the Order disregarded the arbitration agreement's

12   delegation clause and thus improperly reached the issue of arbitrability.  The Order

13   relied upon a misreading of the briefing papers by starting with the premise that

14   "Plaintiff challenges whether there is an agreement between the parties at all."

15   *Order* p. 5.  While Plaintiff's counsel argued through an opposition memorandum of

16   points and authorities that Defendant's website does not provide a reasonable user

17   sufficient notice to form an enforceable agreement, Plaintiff herself never disputed

18   Defendant's contention that she agreed to the terms and conditions irrespective of

19   whether the "reasonable user" had sufficient notice of such terms.  When taken for

20   the implicit admission that it was, Plaintiff's silence as to *her* individual agreement

21   to the terms and conditions mandated that the arbitration agreement's delegation

22   clause be enforced such that the arbitrator, not the Court, decides the issue of

23   arbitrability.  For this reason alone, there exists a likelihood of success on appeal.

24             Defendant also has a likelihood of success on the merits of the issue of

25   whether its website provides sufficient notice to a reasonable user of the terms and

26   conditions.  The notice provided on TTAC's website was at least as conspicuous, if

27   not more so, than similar browsewrap agreements enforced by California courts

28

1  applying the holding of *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir.

2  2014).

3      The Order cites reasons for why this Court believed that the website forces a

4  user to "parse through confusing or distracting content and advertisements" to find

5  the terms and subsequently concluded that sufficient notice was not provided to a

6  reasonable user.  Each such reference is either misplaced or runs contrary to prior

7  cases in which similar webpages, with equally as conspicuous (or even more

8  obscured disclosures than Defendant's) were deemed to provide sufficient notice to

9  users.  The sum total of this resulted in TTAC's website being subjected to disparate

10 treatment to similar websites, deemed to fall short of a gold standard for

11 conspicuousness when all that was required is sufficient notice to the reasonable

12 user of the website.

13     For example, the Order diminishes the conspicuousness of the terms and

14 conditions hyperlink by noting that it is only in the typical blue font color, rather

15 than also being underlined, in all caps, or otherwise set off from the page, being

16 included in an acknowledgment "I agree to the terms and conditions" that is in text

17 that is smaller than the call to action "Complete Purchase" button immediately

18 below it, and on a page, notwithstanding such information being located on the far

19 side of the page and not within the line of sight of both the terms and condition

20 hyperlink and "Complete Purchase."  In so doing, the Order seemingly seeks to

21 impose upon the website a standard of perfection, while the law requires only

22 adequacy or sufficiency.  That the website did in fact provide sufficient notice is

23 demonstrated by previous cases in this Circuit in which enforceable contracts have

24 been found, under California law, on websites in which (i) the terms and conditions

25 hyperlink is not bolded or underlined, *Crawford v. Beachbody, LLC*, 2014 WL

26 6606563, *3 (S.D. Cal. Nov. 5, 2014) (Ramsey Decl. Ex. 1); (ii) the terms and

27 conditions hyperlink is located at the bottom of the page rather than immediately

28 adjacent to the call to action button,  *Nevarez v. Forty Niners Football Co., LLC*,

-4-

1    2017 WL 3492110, *2 (N.D. Cal. Aug. 15, 2017) (website image in decision,

2    available on Westlaw); *see also Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th

3    Cir. 2014) (Ramsey Decl. Ex. 2); and/or (iii) the terms and conditions hyperlink was

4    not only located at the bottom of a screen and well below the webpage's call to

5    action button, but also located next to and below advertisements or other promotions

6    on the screen. *Rodriguez v. Experian Servs. Corp.*, 2015 WL 12656919, *2 (C.D.

7    Cal. Oct. 5, 2015) (Ramsey Decl. Ex. 3.)

8            TTAC's website, and its notice of the terms and conditions hyperlink,

9    matched or exceeded each of the foregoing webpages which were deemed

10   acceptable. The hyperlink was not buried off screen that would have required a user

11   to scroll in order to ever see it; it was located directly above the only button on the

12   page that a user can click to continue and for which there is no dispute that Plaintiff

13   clicked.  The hyperlink is not obscured among other hyperlinks on the page; it is *the*

14   *only* hyperlink on the page.  That the hyperlink is not italicized or underlined does

15   not make it inconspicuous. The reasonable user of a website in 2020 understands

16   that terms which are highlighted in blue are a clickable hyperlink. Its location

17   immediately above a button which Plaintiff does not dispute having clicked and

18   immediately below the payment fields which Plaintiff does not dispute having

19   affirmatively populated with the necessary information to complete the purchase

20   that she does not dispute making only buttresses the point that one cannot avoid

21   spotting the terms and conditions hyperlink and recognizing it for what it is.  To the

22   extent that the Court believed that the video embedded onto the top right corner of

23   the page automatically played and served as a distraction from the hyperlink well

24   below it, that is mistaken.  As the screenshot provided in Defendant's Motion

25   demonstrated, the video has a clickable play button indicating that it is not playing;

26   this is in contrast to where the pause button is displayed which would otherwise

27   indicate that the video was playing.  The reasonable user had constructive notice of

28

1    the terms and conditions, and Defendant has a likelihood of success on these

2    grounds on appeal.

3            Alternatively, Defendant can satisfy this first prong by showing that its appeal

4    raises "serious legal questions," even if it has only a minimal chance of prevailing

5    on the question.  *See Golden Gate Rest. Ass'n v. City and Cnty. Of S.F.*, 512 F.3d

6    1112, 1115-16 (9th Cir. 2008).   An unworkable level of subjectivity has developed

7    on the issue of whether an agreement is enforceable when formed on a website

8    which, like Defendant's, otherwise provides users with conspicuous notice and

9    access to the terms and conditions to which s/he assents following the standard

10   enunciated by *Nguyen* that "where a website makes its terms of use available via a

11   conspicuous hyperlink on every page of the website but otherwise provides no

12   notice to users nor prompts them to take any affirmative action to demonstrate

13   assent, even close proximity of the hyperlink to relevant buttons users must click

14   on—without more—is insufficient to give rise to constructive notice."  *Nguyen*, 763

15   F.3d at 1178-1179.  The moving target of enforceability is highlighted by the

16   disparate results laid bare by the Order when compared to the above cases.

17   Defendant anticipates that its appeal of the Order is likely to elicit some measure of

18   clarification from the Ninth Circuit as to what exactly qualifies as the "more" that

19   *Nguyen* envisioned for district courts to find acceptable online broweswrap

20   agreements.

21                  **2.       *Defendant will be Irreparably Harmed Absent a Stay***

22           If the Court elects not to grant a stay pending Defendant's appeal, TTAC will

23   suffer irreparable harm.  If this matter proceeds in the interim, it will suffer the costs

24   of litigation, the vast amount of which will be incurred by submitting to voluminous,

25   likely unnecessary discovery, particularly substantial discovery of electronically

26   stored information.  Defendant, like so many defendants in putative TCPA class

27   action lawsuits, bear the far heavier burden of resource expenditure than plaintiffs as

28   a consequence of the discovery obligations given the nature of the claims.

1    Defendant will thus forever lose the advantages of arbitration – speed and economy

2    – if the case proceeds pending the appeal of this Court's refusal to compel

3    arbitration.

4         The Ninth Circuit has determined that the loss of the advantages of arbitration

5    is a harm that is both serious and irreparable.  *See Alascom, Inc. v. ITT North Elec.*

6    *Co.*, 727 F.2d 1419, 1422 (9th Cir. 1984).   This harm  is compounded further by the

7    fact that Plaintiff is anticipated to take broad class-related discovery on the putative

8    nationwide class for which she seeks to represent, notwithstanding the fact that

9    Defendant is appealing the enforceability of an arbitration agreement pursuant to

10   which the parties agreed that Plaintiff is only permitted to pursue individual claims,

11   not claims brought on a representative basis.  Thus, not only does TTAC face the

12   risk of engaging in discovery which might not otherwise be permitted pursuant to

13   the rules of arbitration that the parties agreed would govern their dispute, but it also

14   faces the risk of being compelled to produce disclosures far beyond the scope of

15   what the parties agreed is permissible in a dispute between them with respect to the

16   claims Plaintiff can assert.

17        In recognition of the Ninth Circuit's acknowledgment that irreparable harm

18   will be caused by not staying litigation when the issue of arbitration is appealed,

19   courts routinely highlight the irrevocable loss of the chance to reap the advantages

20   of a bargained-for arbitration as sufficient harm justifying a stay pending appeal of a

21   district court's order declining to enforce a party's own arbitration agreement.  *See*

22   *e.g., Ward v. Estate of Goosen,* 2014 WL 7273911, *3 (N.D. Cal. Dec, 2014)

23   ("[A]rbitration is unique" in that "monetary expenses incurred in litigation"

24   generally constitute irreparable harm."); *Echevarria v. Aerotek, Inc.*, *Zaborowski v.*

25   *MHN Government Services, Inc.*, 2013 WL 1832638 (N.D. Cal. May 1, 2013)

26   (issuing stay because the "substantial costs" of defending suit in court "would affect

27   the cost-limiting purpose of arbitration"); *Murphy v. DIRECTV, Inc.*, 2008 WL

28   8608808, *2 (C.D. Cal. July 1, 2008) (issuing stay because "costs of litigation in the

1   face of a denied motion to compel arbitration will generally constitute irreparable

2   harm").

3         To the extent that Plaintiff attempts to argue that this injury is not irreparable

4   because Defendant appeals an issue that is not determinative of the merit of her

5   claims, she misses the point.  Defendant's appeal is not merely determinative of a

6   procedural issue – where her claim is litigated – but whether she can bring claims on

7   a representative basis at all given the arbitration agreement's class action waiver

8   provision.  The inevitable injury to Defendant in having to defend against claims

9   that the Ninth Circuit may ultimately conclude Plaintiff has no right to pursue is

10   self-evident, and it is irreparable.  This Court should issue a stay accordingly.

11              **3.    *The Third and Fourth Factors Also Weigh in Favor of a Stay***

12        Plaintiffs will suffer no substantial harm should a stay issue pending

13   Defendant's appeal.  Notwithstanding her request for injunctive relief, Plaintiff does

14   not and cannot allege that she continues to be contacted by or on behalf of

15   Defendant.  The relationship between the parties has ended.  Plaintiff chiefly seeks

16   to recover statutory damages for alleged violations of the TCPA, and any delay in

17   seeking statutory damages, without more, does not constitute harm or damage to a

18   plaintiff.  *See Errington v. Time Warner Cable Inc.*, 2016 WL 2930696, *4 (C.D.

19   Cal. May 18, 2016).  Any harm to Plaintiff in terms of delay in a possible recovery

20   of monetary damages would not be irreparable; in fact, in the event that she prevails

21   the delay can and would be compensated to her through prejudgment interest, as

22   permitted by applicable law.  Moreover, Plaintiff's ability to pursue discovery in the

23   event that Defendant's appeal is unsuccessful would not be harmed, as Defendant

24   has instituted a litigation hold for potentially relevant records and issued a document

25   preservation notice to the relevant non-party.  In short, Plaintiff will suffer no harm

26   were a stay to issue pending Defendant's appeal.

27         Finally, the public interest clearly favors a stay.  Policies underlying

28   arbitration law stress the importance of judicial efficiency and economy.  Thus, it is

little surprise that courts entertaining applications to stay pending appeals of a denial of motions to compel arbitration routinely stress that issuing such stays avoids wasting judicial resources while keeping with the federal policy favoring arbitration. *See e.g.*, *AG Edward & Sons, Inc. v. McCullough*, 967 F.2d 1401, 1404 n. 2 (9th Cir. 1992); *Sample v. Brookdale Senior Living Communities, Inc.*, 2012 WL 195175, \*2 (W.D. Wash. Jan 23, 2012) ("Disputes about whether or not parties must submit to arbitration take place against a backdrop of policies encouraging arbitration and the preservation and integrity of judicial resources. Here, continuing to litigate in this Court during the pendency of the appeal would undermine both policies because of the risk of redundant or inconsistent actions. The public interest weighs in favor of a stay."); *Laster v. T-Mobile USA, Inc.*, 2008 WL 5377635, \*3 (S.D. Cal. Nov. 4, 2008) ("stay serves public's interest by promoting the strong federal policy encouraging arbitration as a prompt, economical and adequate method of dispute resolution.") (internal quotations and citations omitted).

## IV.   CONCLUSION

TTAC respectfully requests that the Court stay this case pending the Ninth Circuit's resolution of its appeal.

Dated:  December 2, 2020     SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By        *_/s/ Jay T. Ramsey_*
          JAY T. RAMSEY

          Attorneys for TTAC PUBLISHING, LLC

-9-

SMRH:4831-4644-9363.1