Richard T. Drury (SBN 163559)
richard@lozeaudrury.com
Rebecca Davis (SBN 271662)
rebecca@lozeaudrury.com
**LOZEAU DRURY LLP**
1939 Harrison, Suite 150
Oakland, CA 94612
Telephone: (510) 836-4200
Facsimile: (510) 836-4205

**WOODROW & PELUSO, LLC**
Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Taylor Smith*
tsmith@woodrowpeluso.com
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0676
Facsimile: (303) 927-0809

*Pro Hac Vice*

*Attorneys for Plaintiff and the Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| **MICHELLE SHULTZ**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**TTAC PUBLISHING, LLC**, a Nevada limited liability company,<br><br>Defendant. | Case No. 4:20-cv-04375-HSG<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO STAY**<br><br>**Date: February 4, 2021**<br>**Time: 2:00 p.m.**<br>**Courtroom: 2, 4th Floor**<br>**Hon. Haywood S. Gilliam Jr.** |

## I.    INTRODUCTION

On August 21, 2020, Defendant TTAC Publishing, LLC ("Defendant" or "TTAC") filed a Motion to Compel Arbitration of Plaintiff Michelle Shultz's ("Plaintiff" or "Shultz") claims for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA"). (Dkt. 14.) The Court denied the Motion to Compel because TTAC's website layout did not provide adequate notice of its terms and "Plaintiff is therefore not bound by the Terms and Conditions generally, or the arbitration provision more specifically." (Dkt. 23 at 8.) As a result of Defendant's failure to demonstrate an enforceable agreement to arbitrate, the Court did not reach Shultz's claims that her dispute falls outside the scope of any purported agreement and that TTAC's purported class action waiver is unconscionable. (*See id.* at 8, n. 2.) TTAC has since appealed the Court's order and now asks that this case be stayed pending its appeal. (Dkt. 26, 30.)

Notwithstanding Defendant's failure to timely file its Motion to Stay in accordance with the Court's instructions,[1] TTAC's arguments for staying this matter are meritless. The factors considered in this Circuit for staying a case pending appeal do not favor Defendant's position. TTAC has not, and indeed cannot, make a strong showing that it is likely to succeed in its appeal. The Court's conclusion comports squarely with the Ninth Circuit's *Nguyen* decision, and the district court cases cited by TTAC in support of its contrary conclusion are readily distinguishable. Likewise, the "irreparable harm" that Defendant claims it will suffer would occur only if the Parties entered into an enforceable agreement to arbitrate—they did not, and even if the agreement proffered were valid, Shultz's claims fall outside the scope of TTAC's alleged arbitration clause. Staying this matter would severely and unnecessarily delay progress and resolution of this matter, which would harm Plaintiff's ability to pursue relief. Accordingly, the Court should deny the Motion to Stay.

## II.    ARGUMENT

---

[1] "Within two weeks from today **(November 24th)**, counsel for defendant shall file a motion to stay if it appeals the order denying the motion to compel arbitration." (Dkt. 25.) TTAC did not file its motion until December 2, 2020, more than a week after it filed notice of its appeal.

As TTAC notes in its Motion, the decision of "[w]hether to issue a stay pending appeal is 'an exercise of judicial discretion ... to be guided by sound legal principles.'" *Mohamed v. Uber Techs., et al*, 115 F. Supp. 3d 1024, 1027 (N.D. Cal. 2015) (quoting *Nken v. Holder,* 556 U.S. 418, 433–34, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009)). Courts in the Ninth Circuit weigh four factors, which are similar to the factors analyzed when considering a preliminary injunction:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) whether the public interest favors a stay.

*Mohamed*, 115 F. Supp. 3d at 1027–28; *see also Leiva-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011). As explained below, the balance of these factors weighs against TTAC's request to stay these proceedings.

## A.   Defendant Cannot Make A Strong Showing That Its Appeal Is Likely To Succeed.

The first factor—likelihood of success on the merits—does not require a movant to show that success is more likely than not, but "it must make a 'strong showing' on the merits." *Mohamed*, 115 F. Supp. 3d at 1028. The Ninth Circuit considers these factors on a continuum, such that "where only…a lesser showing [of success] is made, the appellant must further demonstrate that the balance of the hardships absent a stay tips 'sharply' in its favor." *Id.* (citing *Morse v. Servicemaster Global Holdings, Inc.*, No. C10–628–SI, 2013 WL 123610, at *1–2 (N.D.Cal. Jan. 8, 2013). Here, TTAC fails to make a strong showing of success.

Defendant begins by making an unusual claim that Plaintiff "never disputed" the existence of an enforceable agreement between herself and TTAC—as a result, TTAC imagines a "implicit admission" by Shultz that she agreed to mandatory arbitration. (Dkt. 30 at 3.) This position is indefensible, as Shultz repeatedly contended in her response to the Motion to Compel that Defendant's adhesion terms were not enforceable against herself. (*See, e.g.*, Dkt. 18 at 2, 4–7, 9–

10, 11) ("Without adequate notice, Plaintiff could not and did not manifest assent to those term[s], and there is no enforceable agreement to arbitrate her claims."). Shultz disputed the existence of any agreement to arbitrate, and the Court agreed in finding that she could not be bound "by the Terms and Conditions generally, or the arbitration provision more specifically" because TTAC's website layout was insufficient to put Plaintiff (or other visitors) on notice of the terms. (Dkt. 23 at 8.) Defendant's argument grossly misrepresents Plaintiff's arguments that informed the Court's denial of the Motion to Compel, and it does not demonstrate any likelihood of success on appeal.

The remainder of TTAC's claim that it is likely to succeed on appeal is based on Defendant's belief that its website layout was "at least as conspicuous, if not more so" than others that have been found sufficient. (Dkt. 30 at 3.) But the district court cases cited by Defendant are distinguishable, and what TTAC characterizes as "disparate treatment" is, in reality, a reflection of its website's deficiencies and similarity to the layout held to be insufficient in *Nguyen*.

As a reminder, the *Nguyen* court held that "the proximity or conspicuousness of the hyperlink alone is not enough to give rise to constructive notice," especially where the website otherwise failed to admonish website users to actually *review* the terms of use before proceeding. *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1178 (9th Cir. 2014). "[W]here a website makes its terms of use available via a conspicuous hyperlink on every page of the website but otherwise provides no notice to users nor prompts them to take any affirmative action to demonstrate assent, even close proximity of the hyperlink to relevant buttons users must click on—without more—is insufficient to give rise to constructive notice." *Id.* at 1178–79.

Like the website in *Nguyen*, TTAC's website did not require or even admonish users to read the terms and conditions; though it featured a checkbox next to the statement "I agree to the terms and conditions," the checkbox is *already checked* when a customer navigates to the checkout page which means that a user "does not have to click on the checkbox itself to manifest her assent." (Dkt. 23 at 6.) The Court went further and listed several reasons why TTAC's website layout "makes it extremely difficult to discern the significance" of the terms and conditions

1   hyperlink: (1) the "I agree" statement is in very small text, dwarfed by the large, green "Complete

2   Purchase" button; (2) the hyperlink was not underlined, highlighted, capitalized, or otherwise set

3   off from the other text; (3) the purchase page features a promotional video playing at maximum

4   volume; and (4) the pre-checked checkbox is obscured by the presence of larger, colorful

5   checkmarks related to nearby product advertisement on the page. (*Id.* at 7–8.) Thus, and in

6   accordance with *Nguyen*, the Court determined that "the design and content of the checkout

7   process distracts users from recognizing the existence of, and need to review, the Terms and

8   Conditions, and the hyperlink was not conspicuous enough to put Plaintiff on inquiry notice." (*Id.*

9   at 8.)

10       To support its contrary position, Defendant cites to several district court decisions that

11   permitted enforcement of terms and conditions that were imperfectly presented. (*See* Dkt. 30 at 4–

12   5) (citing *Crawford v. Beachbody, LLC*, 2014 WL 6606563 (S.D. Cal. Nov. 5, 2014); *Nevarez v.*

13   *Forty Niners Football Co., LLC*, 2017 WL 3492110 (N.D. Cal. Aug. 15, 2017); *Rodriguez v.*

14   *Experian Servs. Corp.*, 2015 WL 12656919 (C.D. Cal. Oct. 5, 2015)). While the terms in each of

15   these cases may have featured aspects that rendered them less conspicuous, each website

16   succeeded in a way that TTAC's critically failed: additional language creating notice. Where

17   *Nguyen* held that proximity of terms "without more" is insufficient for constructive notice, "[t]he

18   *without more* refers to additional language" admonishing users to read the terms and alerting them

19   to the action that will manifest assent thereto. *Nguyen*, 763 F.3d at 1178–79; *Rodriguez*, 2015 WL

20   12656919 at *2 (emphasis in original). TTAC's website does not feature the additional language

21   that gave rise to notice in the other cases. *Compare* (Dkt. 14-1 at ¶¶ 5) ("I agree to the terms and

22   conditions."), *with Crawford*, 2014 WL 6606563 at *3 ("By clicking Place Order below, you are

23   agreeing that you have read and understand the Beachbody Purchase Terms and Conditions, and

24   Team Beachbody Terms and Conditions."), *and Nevarez*, 2017 WL 3492110 at *7 ("By clicking

25   the 'Submit Order' button, you are agreeing to the Ticketmaster Purchase Policy and Privacy

26   Policy."), *and Rodriguez*, 2015 WL 12656919 at *2 ("By clicking the button above ... you agree

27

28   RESPONSE IN OPPOSITION TO                          5                  Case No. 4:20-cv-04375-HSG
     MOTION TO STAY

to our Terms of Use.").

In short, and as the Court held, TTAC's website layout does not conspicuously present its hybridwrap terms and conditions, and it lacks critical language to give rise to inquiry notice. Defendant's website falls short of those cited in TTAC's motion, and the Court's denial of the Motion to Compel was a sound decision supported by *Nguyen*. Defendant has not made a strong showing, and indeed little of a showing at all, that it is likely to succeed on appeal.

### B.      TTAC Will Not Suffer "Irreparable Harm" If A Stay Is Not Granted.

With regard to the second factor, Defendant claims that it will suffer irreparable harm in the form of the loss of "speed and economy" associated with arbitration if the Court does not stay this matter pending its appeal. (Dkt. 30 at 7.) As explained below, this argument fails for two reasons: (1) Plaintiff's claims are not the subject of any agreement to arbitrate, and (2) neither speed nor economy will be served by staying all proceedings in this matter for what could be several years.

TTAC cites to *Alascom* for the proposition that the loss of the advantages of arbitration— namely "speed and economy"—is "serious, perhaps, irreparable." *Alascom, Inc. v. ITT North Elec. Co.*, 727 F.2d 1419, 1422 (9th Cir. 1984); (Dkt. 30 at 7.) However, the Court in *Alascom* held this harm to be serious in the context of a motion to stay arbitration pending parallel litigation, assuming that an agreement had been reached: "where an order grants *a stay of arbitration*, one party is deprived of the inexpensive and expeditious means by which *the parties had agreed to resolve their disputes*." *Alascom*, 727 F.2d at 1422 (emphasis added). The posture of this case and TTAC's appeal is crucially distinct because there is no pending arbitration that the Court has stayed, and there is no enforceable agreement to arbitrate. As explained above, the Court held that TTAC's website did not provide sufficient notice to bind Plaintiff to its adhesion arbitration agreement. (Dkt. 23 at 8.)

Further, although the Court had no need to reach Plaintiff's arguments regarding the scope of the supposed "agreement," Plaintiff's TCPA claim is not within the stated scope of

Defendant's mandatory arbitration clause. (*See* Dkt. 18 at 7–9.) The language of TTAC's

arbitration clause purports to apply to "all claims, disputes or controversies against Company

*arising out of this User Agreement, or the purchase of any products or services* ("Claims")."

(Dkt. 14-2) (emphasis added). This language does not encompass Plaintiff's TCPA claim because

the text messages that she received were extra-contractual conduct and an attempt by TTAC or its

agents to solicit new business. Arbitration is a matter of contract and "a party cannot be required

to submit to arbitration any dispute which he has not agreed so to submit." *Esparza v. SmartPay

Leasing, Inc.*, 765 F. App'x 218, 219 (9th Cir. 2019) (quoting *Samson v. NAMA Holdings, LLC*,

637 F.3d 915, 923 (9th Cir. 2011)). Thus, even in the unlikely event that Defendant's appeal

succeeds, the question would still remain for this Court whether Plaintiff's claims are

encompassed by any supposed agreement.

   The Court has not stayed any proceedings that would deprive TTAC of "speed and

economy" associated with arbitration. Rather, it is Defendant that seeks to stay this matter—the

greatest obstacle to speedy resolution of Plaintiff's claims is TTAC itself. The Ninth Circuit

estimates that oral arguments are not heard until approximately 12-20 months after a notice of

appeal is filed, and a decision may take up to a year to issue after oral arguments.[2] In other words,

Defendant is asking the Court to freeze all discovery in this case for more than a year, and up to

three years, while the Ninth Circuit considers its appeal. The precise "harm" that Defendant

contends it seeks to avoid will be *increased* by a stay.

   Defendant also contends that the costs associated with class discovery would constitute

irreparable harm when a motion to compel arbitration is denied. (Dkt. 30 at 7–8.) This is generally

the case when the applicable agreement to arbitrate limits or forfeits formal discovery, such that

the burden would be substantially greater in traditional litigation. *See Ward v. Estate of Goosen*,

2014 WL 7273911, *3–4 (N.D. Cal. Dec, 2014). Though TTAC's purported arbitration clause

---

[2] *See* Frequently Asked Questions: Briefing/Hearing Process, UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT, https://www.ca9.uscourts.gov/content/faq.php (last visited Dec. 11, 2020).

1   does not appear to formally limit discovery, the point is moot because, even if it were enforceable

2   against Shultz (it is not), the "agreement" to arbitrate does not extend to Plaintiff's TCPA claims,

3   which do not "aris[e] out of this User Agreement, or the purchase of any products or services."

4   (Dkt. 14-1 at ¶ 10.)[3]

5        This is not an instance of a party being deprived of the advantages of a "bargained-for"

6   arbitration, as TTAC would have the Court believe. (Dkt. 30 at 7.) Defendant sought to bind

7   Shultz to an adhesion agreement to arbitrate, and the Court refused because Plaintiff was without

8   notice of the terms and thus could not agree to be bound. Even if enforceable, the agreement to

9   arbitrate would not apply to Plaintiff's TCPA claims, and therefore discovery related to those

10  claims will not constitute an irreparable harm that a stay could prevent. Likewise, the harm to

11  "speed and economy" would only be exacerbated by a stay. The second factor does not weigh in

12  favor of Defendant's request.

13  **C.    Plaintiff Will Be Injured By Staying This Case.**

14       The last two factors considered by the courts are harm to the non-moving party and the

15  public interest. *Mohamed*, 115 F. Supp. 3d at 1027–28. TTAC asserts that Plaintiff will not suffer

16  any continued harm because "[t]he relationship between the parties has ended." (Dkt. 30 at 8.) But

17  any "relationship" that may have existed between the parties ended before Plaintiff began

18  receiving text messages—Defendant claims that Plaintiff made a purchase from its website on

19  April 13, 2018 (dkt. 14-1 at ¶ 7), but the text messages began in November 2019—more than a

20  year and a half later. (Dkt. 1 at ¶ 19.) Further, Plaintiff seeks injunctive relief in her Complaint,

21  which is necessary to prevent TTAC from continuing its unlawful telemarketing practices

22  directed not just to herself, but to any class members. (Dkt. 1 at 11 (seeking "[a]n injunction

23  requiring Defendant to cease all unsolicited text messaging activities, and otherwise protecting the

24

25  [3] TTAC also leans on its class action waiver to suggest that Plaintiff cannot conduct discovery

26  related to representative claims. (Dkt. 30 at 8.) Plaintiff maintains, and has already argued before
    the Court, that the class action waiver included Defendant's terms and conditions (assuming they

27  were enforceable) is unconscionable or otherwise unenforceable. (Dkt. 18 at 9–11.)

28  RESPONSE IN OPPOSITION TO            8
    MOTION TO STAY                              Case No. 4:20-cv-04375-HSG

interests of the Class"); *see also id.* at ¶ 27.) Even if Shultz does not receive another message, every month that this matter is delayed is another month for Defendant to continue its automated telemarketing campaign to other consumers unchecked and exacerbate the harms at issue in the case.

In addition to the harm associated with continued telemarketing, Plaintiff's ability to pursue this action would be harmed by a stay. Generally, a delay that results from a stay can harm plaintiffs because it threatens the availability of evidence. *Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr., Inc.,* 490 F.3d 718, 724 (9th Cir. 2007) (recognizing that "[d]elay inherently increases the risk that witnesses' memories will fade and evidence will become stale"). TTAC represents that it has instituted a hold for relevant records and issued a preservation notice to a non-party, but these measures do not change the fact that the stay Defendant seeks could extend for, according to the Ninth Circuit's own approximation, up to 32 months. If Plaintiff is unable to issue discovery or subpoenas to secure evidence possessed by Defendant and its agents for another year or two, Shultz will undoubtedly be prejudiced in her ability to support her claims for relief. In short, Plaintiff will likely suffer harm if the case is stayed because she would be unable to even discover evidence material to her claims for the duration of any stay, during which time Defendant could continue its unlawful practices. This factor weighs against a stay.

With regard to the public interest, Defendant suggests that policies encouraging arbitration and the preservation of judicial resources favor the requested stay. (Dkt. 30 at 8–9.) While that may be true, the public interest in these policies cannot supersede the reality that Plaintiff never agreed to arbitrate her claims. Further, Plaintiff seeks to bring an end to Defendant's unlawful telemarketing activities, which likely affect a great number of consumers. The public interest undoubtedly favors timely enforcement of the TCPA to prevent unlawful, intrusive calls. *See Barr v. Am. Ass'n of Political Consultants, Inc,* 140 S. Ct. 2335, 2356, 207 L. Ed. 2d 784 (2020) (referring to "the tens of millions of consumers who would be bombarded every day with nonstop robocalls notwithstanding Congress's clear prohibition of those robocalls").

1         The stay requested by Defendant could last for several years. A stay of this length will

2    serve only to harm Plaintiff and her ability to pursue her claims. Likewise, to the extent the public

3    interest may favor staying these proceedings, it does not outweigh the remaining factors that

4    counsel against TTAC's request. The Court should deny Defendant's motion.

5    **III.**    **CONCLUSION**

6         Defendant's Motion to Stay this matter pending resolution of its appeal should be denied.

7    TTAC has not made a strong showing that it is likely to succeed on appeal because the Court

8    applied the prevailing standards from *Nguyen* to determine that Defendant's website did not

9    provide adequate notice to Plaintiff of the subject terms and conditions to create an enforceable

10   agreement. Defendant will not suffer "irreparable harm" because Shultz did not agree to

11   arbitration, and even if TTAC's adhesion agreement were enforceable, Plaintiff's TCPA claim

12   falls outside the clause's terms. Staying this matter will serve only to harm Plaintiff's ability to

13   pursue relief on behalf of herself and the Class. Accordingly, the Court should deny the motion,

14   permit the parties to proceed, and award any such relief as it deems necessary and just.

15

16                                  Respectfully submitted,

17   Dated: December 11, 2020          **MICHELLE SHULTZ**, individually and on behalf
                                    of all others similarly situated,

18

19                                  By: */s/  Patrick H. Peluso*

20                                Richard T. Drury (SBN 163559)
                                  richard@lozeaudrury.com

21                                Rebecca Davis (SBN 271662)
                                  rebecca@lozeaudrury.com

22                                **LOZEAU DRURY LLP**
                                  1939 Harrison, Suite 150

23                                Oakland, CA 94612
                                  Telephone: (510) 836-4200

24                                Facsimile: (510) 836-4205

25                                Patrick H. Peluso*
                                  ppeluso@woodrowpeluso.com

26                                Taylor T. Smith*
                                  tsmith@woodrowpeluso.com

27                                **WOODROW & PELUSO, LLC**

28   RESPONSE IN OPPOSITION TO          10
     MOTION TO STAY                          Case No. 4:20-cv-04375-HSG

3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0676
Facsimile: (303) 927-0809

*Attorneys for Plaintiff and the Class*

\* *Pro Hac Vice*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the above titled document was served upon counsel of record by filing such papers via the Court's ECF system on December 11, 2020.

*/s/ Patrick H. Peluso*

RESPONSE IN OPPOSITION TO
MOTION TO STAY

12

Case No. 4:20-cv-04375-HSG