SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
JAY T. RAMSEY, Cal. Bar No. 273160
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6055
Telephone:  310.228.3700
Facsimile:   310.228.3701
E mail          jramsey@sheppardmullin.com

KLEIN MOYNIHAN TURCO LLP
Neil Asnen (*pro hac vice* application to be filed)
450 Seventh Avenue, 40th Floor
New York, New York 10123
TEL: 212-246-0900
FAX: 212-216-9559
nasnen@kleinmoynihan.com

Attorneys for TTAC PUBLISHING, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE SHULTZ, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TTAC PUBLISHING, LLC,<br><br>Defendant. | Case No. 4:20-cv-4375-HSG<br><br>**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO STAY**<br><br>**Date: Feb. 4. 2021**<br>**Time: 2:00 p.m.**<br>**Ctrm: 2, 4th Floor**<br><br>*Honorable Haywood S. Gilliam, Jr.* |

## I. INTRODUCTION

The Court is faced with a relatively straightforward question: whether to forge ahead with discovery – the chief costs and burdens of which will inevitably fall unliterally on Defendant – and related litigation, only to potentially see the Ninth Circuit render those efforts a waste, or alternatively to issue a brief stay pending a relevant decision from the Ninth Circuit on whether Plaintiff is bound by an arbitration agreement entered into at the time that she completed a purchase on Defendant's website, a transaction which she does not dispute undertaking. Under the circumstances, the choice is clear.

Defendant's moving papers demonstrated the propriety of a stay. Because, Defendant's appeal has both a likelihood of success and presents serious legal questions, and because Plaintiff would suffer no significant prejudice from a stay while substantial and irreparable harm would inure to Defendant in the absence of one, the Court should issue a stay pending resolution by the Ninth Circuit of TTAC's appeal. In her response to Defendant's application, Plaintiff submitted an opposition that is long on argument concerning the merits of Defendant's appeal and the issue of arbitrability, and short on the merits of whether Defendant is entitled to a stay pending resolution of that appeal.

Plaintiff's opposition against each of the three factors relevant to the stay analysis identified by the Supreme Court in *Nken v. Holder*, 556 U.S. 418, 433-34 (2009), makes the same argument: the arbitration agreement is purportedly unenforceable against Plaintiff. Nevertheless, it is that very conclusion that is the subject of appeal before the Ninth Circuit. A court's denial of a motion to compel arbitration is not both shield and sword against stay applications pending appeal, nor does each *Nken* factor automatically cut in Plaintiff's favor because of the initial denial itself. Otherwise stays would never be granted pending the appeal of a denial of an arbitration motion. However, stay requests are not rejected as a matter of course. In fact, there is a wealth of case law, cited in Defendant's Motion,

demonstrating that such stays are granted with regularity.  Defendant respectfully requests that this Court do the same and issue a stay accordingly.

## II. ARGUMENT

### A. Defendant's Appeal Has a Likelihood of Success and Raises Serious Legal Questions

Plaintiff's opposition correctly notes that in order for Defendant to carry its burden to establish the propriety of a stay, it need not show that its appeal is more likely than not to succeed, but merely demonstrate a strong showing on the merits.

Defendant identified the grounds for which it believes demonstrate a strong showing on appeal.  Chief among them was that the analysis applied to Defendant's website ultimately subjected it to disparate treatment relative to websites whose content and design similarly contained promotions or a variety of colors and font sizes, or alternatively a multitude of clickable hyperlinks (both underlined and not), which rendered disclosure of the terms and conditions thereon no more conspicuous than that contained on Defendant's website, and in all likelihood less so. Nevertheless, enforceable agreements to arbitrate were found to have been formed by the websites identified in Defendant's Motion, while Defendant's website was seemingly subjected to an "ideal conspicuousness standard," rather than one examining whether the website provided adequate constructive notice to the reasonable website user in 2020.  Plaintiff's opposition references the Order's reasoning for which the Court believed that the website did not provide sufficient notice to Plaintiff; in each instance, however, Defendant's Motion either (i) demonstrated why it believes the Order was wrong, or alternatively (ii) identified prior cases in which courts in this Circuit enforced website terms and conditions that either offended the Order's concerns.  Thus, Defendants respectfully submit that it put forth a sufficiently strong showing of the merits of its appeal that the TTAC website was subjected to differing treatment relative to similar websites as a result of an over-exacting application of the browsewrap analysis standard.

Moreover, Plaintiff likewise highlights the significant legal issues raised by Defendant's appeal, even in the event that Defendant were unable to satisfy its burden of demonstrating that it has a likelihood of success. Specifically, Plaintiff argues that the "without more" standard referenced in *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1178 (9th Cir. 2014) refers to purportedly required language admonishing a user to read the terms and conditions and alerting them to their assent thereto. However, such a requirement would effectively transform the enforceability analysis for browsewrap agreements into the analysis for hybridwrap or sign-up wrap agreements. *See Lundbom v. Schwan's Home Service, Inc.*, 2020 WL 2736419, *4 (D. Or. May 26, 2020) ("The terms in hybrid agreements will be given effect if an offeree has inquiry notice of the terms and assents to the terms through conduct, such as creating an account [or completing a purchase], that a reasonable person would understand to constitute consent") (internal citations omitted). Defendant's appeal will present the Ninth Circuit with the opportunity to provide clarity correcting the jurisprudence that has taken root following *Nguyen* pursuant to which the requirements applicable to other forms of online agreements have impermissibly crept into the analysis applicable to browsewrap agreements. Businesses and consumers alike will benefit from the anticipated clarity and certainty.

**B.    Plaintiff's Analysis of the Balance of Hardships and Equities is Incorrect**

Plaintiff argues that TTAC would not actually suffer the harm associated with a loss of the advantages of arbitration both because, consistent with the Order denying arbitration, Plaintiff cannot be bound to arbitrate, and that even if the arbitration agreement is enforceable it wouldn't encompass her claims anyway. Plaintiff's argument is flawed for a variety of reasons.

First, Plaintiff takes issues with Defendant's reliance on *Alascom, Inc. v. ITT North Elec. Co*, 727 F.2d 1419 (9th Cir. 1984) to refer to the Ninth Circuit's

determination that the loss of a the advantages of arbitration – speed and economy – is a "serious, perhaps, irreparable" harm.   Plaintiff claims that *Alascom's* proclamation has no relevance to Defendant's application because *Alascom* was decided against the backdrop of a district court granting a stay of arbitration. However, "[t]he Ninth Circuit has clarified that there is no practical difference between an order staying arbitration and an order refusing to compel arbitration." *Ferguson v. Corinthian Colleges*, 2012 WL 27622, *3 (C.D. Cal. Jan. 5, 2012); s*ee Int'l Ass'n of Machinists and Aerospace Workers, AFL–CIO v. Aloha Airlines, Inc.,* 776 F.2d 812, 814–15 (9th Cir.1985) ("We conclude that there is no significant difference between the grant of the motion to stay arbitration involved in *Alascom* and the denial of the motion to compel arbitration present here. Both orders were in the nature of an injunction because the court declined to exercise its equitable powers to order a proceeding in another forum."). As a result, myriad district courts have cited to the loss of arbitration's benefits as the precise irreparable harm justifying a stay of proceedings pending the appeal of an order denying arbitration.  *See* Dkt. 30 p. 7.

In more specifically opposing Defendant's argument that it would suffer substantial and irreparable harm in the absence of a stay as a direct result of losing the benefits of arbitration, Plaintiff also puts the proverbial cart before the horse in at least two ways.  First, Plaintiff argues that Defendant cannot lose the benefits of arbitration because it is not entitled to enforce the agreement against Plaintiff.  Of course, this is the exact subject of Defendant's appeal and will ultimately be decided by the Ninth Circuit.  If the Ninth Circuit sides with Defendant, then, without a stay, Defendant will have needlessly incurred substantial monetary expense in litigation costs that very likely would not otherwise be borne at arbitration.  This is particularly so given that the arbitration agreement also mandates that Plaintiff arbitrate her claim on an individual basis, precluding her from bringing the claims she has sought to assert on behalf of the putative in the district court.  This latter

point also relates to the second way in which Plaintiff's opposition is inappropriately presumptive of the potential outcome; Plaintiff argues that even if the arbitration agreement were enforceable, it would neither cover Plaintiff's claims nor be capable mandating arbitration on an individual basis.[1]  Each of these arguments concerning the scope of the arbitration agreement, however, ignore the arbitration agreement's delegation language which otherwise leaves these determinations to the arbitrator. [2] Thus, Plaintiff's opposition arguments concerning the scope of the arbitration agreement are futile to deny a stay because in the event that the Ninth Circuit concludes that the agreement form on Defendant's website is enforceable against

---

[1]    While the decision on whether the arbitration agreement mandates claims be brought on an individualized basis or allows for class-wide arbitration is ultimately one left to the arbitrator by virtue of the agreement's delegation clause (*see* n. 2, *infra*), it is nevertheless worth highlighting the numerous myriad cases in which the United States Supreme Court has recently reaffirmed the principal the arbitration agreements that contain class-action waivers are indeed enforceable. *See AT&T Mobility LLC v. Concepcion,* 563 US 333 (2011) (California state contract rule deeming class action waivers in consumer arbitration agreements preempted by Federal Arbitration Act because it stood as obstacle to accomplishing full purpose of FAA); *American Express Co. v. Italian Colors Restaurant,* 133 S. Ct. 2304 (2013) (rejecting argument that class action waivers in arbitration clauses should not be enforced when prosecuting individual claims at arbitration might be cost prohibitive); *DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 468 (2015) (finding that FAA permits parties to arbitration agreement to choose what laws govern some or all of its provisions, including enforceability of class-action waiver); *Lamps Plus Inc. v. Varela*, 139 S. Ct. 1407, 1419 (2019) (class action arbitration impermissible unless expressly permitted by the parties' arbitration agreement as a court may not properly infer the parties' consent to class arbitration from ambiguous agreements).

[2]    At the risk of rearguing the merits of Defendant's motion to compel arbitration, Defendant would note that courts nearly universally determine that an arbitration agreement's incorporation of the of the American Arbitration Association's arbitration rules "constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Oracle Am., Inc. v. Myriad Group A.G.*, 724 F.3d 1069 (9th Cir. 2013).  Plaintiff's argument that Defendant will not suffer any harm associated with being deprived of arbitration's benefit because her claims are outside the scope of the agreement is thus irrelevant to the stay analysis.  The determination of the arbitration agreement's scope would be decided at arbitration should the Ninth Circuit conclude that the agreement itself is enforceable. Defendant would be manifestly prejudiced were the district court proceedings to continue apace while a jurisdictional issue is subject to appeal.  In the event that the Ninth Circuit sustains Defendant's appeal, an arbitral forum will touch this dispute in some capacity.

1  Plaintiff, the scope of the agreement would be decided at arbitration, not by the
2  court.
3        Plaintiff also misinterprets the manner in which litigants benefit from the
4  speed afforded by arbitration.  Plaintiff argues that Defendant undermines its own
5  claims of harm from a loss of arbitration's speed by seeking a stay of the
6  proceedings pending appeal.  This is an inappropriately narrow understanding of the
7  benefit provided by the speed associated with arbitration, and seemingly only
8  focuses on how quickly the parties arrive at the eventuality without any regard for
9  the process by which the parties reach the end point.
10        Arbitration's speed is derived from the fact that "[i]n bilateral arbitration,
11  parties forgo the procedural rigor and appellate review of the courts," thus
12  facilitating quicker decision-making by the arbitrator.  *AT&T Mobility LLC v.*
13  *Concepcion*, 563 U.S. 333, 348 (2011).  This implicates not only the ultimate
14  arbitration award, but also decisions with respect to discovery or evidentiary
15  disputes, or resolution of motion practice related to ancillary issues, including
16  prospective dispositive motions.  Thus, as it relates to arbitration, speed is both an
17  end and a means.  Plaintiff's opposition views it solely as an end.  Consequently,
18  Plaintiff is mistaken to frame the question as merely whether a stay pending appeal
19  inhibits the goal of quicker final adjudication otherwise provided by arbitration.
20  Doing so unreasonably removes from consideration the speed afforded by
21  arbitration relative to every decision rendered along the way to that final
22  adjudication, as well as the fundamental difference as to both the number and type
23  of requests for decision that can be presented to the adjudicator. "Arbitration is a
24  dispute resolution process designed . . . to respond to the wishes of the parties more
25  flexibly and expeditiously than the federal courts' uniform rules of procedure
26  allow." *Kyocera Corp. v. Prudential-Bache Trade Services, Inc.*, 341 F.3d 987, 998
27  (9th Cir.2003).  Were Plaintiff's argument persuasive, courts would systematically
28  refuse to issue stays pending appeal of a denial of a motion to compel arbitration as

a matter of court.  Instead, they routinely cite as an irreparable harm to be avoided the loss of speed and economy afforded by arbitration because absent a stay parties would bear the delay and expense associated with litigation.  *See, e.g., Ferguson v. Corinthian Colleges*, 2012 WL 27622, *4 (C.D. Cal. Jan. 5, 2012).

Plaintiff's claims that she, or putative class members, would suffer harm from a stay greater than Defendant would in the absence of one are also ill founded. Plaintiff claims to have received messages in November 2019, Dkt. 1, ¶ 19, and seeks statutory damages for same.  Notwithstanding performatively seeking injunctive relief, Plaintiff does not claim that she continues to receive any such messages.  Not only is it purely speculative that similar messages continue to be sent given that Plaintiff herself ceased receipt of such messages approximately seven (7) months before the Complaint was filed, it is  likewise speculative that Plaintiff runs the risk of loss of evidence during the course of a stay.  Plaintiff rightfully notes that Defendant has instituted an internal litigation hold and issued a document preservation demand to the relevant third party.  Moreover, speculative concerns over loss of evidence are routinely dismissed by Courts in the stay analysis, as they should be here.  *See, e.g., Abu-Hajar v. AutoNation, Inc.*, 2017 WL 10591886 (C.D. Cal. Aug. 17, 2017) (*citing Bay Area Surgical Grp., Inc. v. Aetna Life Ins. Co.*, 2014 WL 2759571, *5 (N.D. Cal. June 17, 2014)).

Finally, Plaintiff's analysis of where the public interest lies is incorrect. While the public holds an interest in "vindicating consumer rights," *see Discover Bank v. Superior Court*, (2005) 36 Cal. 4th 148, 159, a stay will not materially impact that interest given there is nothing to suggest that any consumer continues to be contacted on behalf of Defendant in violation of the TCPA.  To the contrary, a stay *would* advance the strong public interest favoring arbitration agreements by ensuring that TTAC is not required to litigate this dispute in the district court until and unless the Ninth Circuit resolves the pending appeal in Plaintiff's favor.

## III. CONCLUSION

For the foregoing reasons, as well as those detailed in Defendant's moving papers, the Court should stay this case pending the Ninth Circuit's resolution of Defendant's appeal.

Dated: December 16, 2020    SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By   */s/ Jay T. Ramsey*
     JAY T. RAMSEY

     Attorneys for TTAC PUBLISHING, LLC